IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| -vs- | ) |
| | ) Criminal No. 06-362 |
| RAHMATALLI HAZRATALIE, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# **FINDINGS OF FACT**
# **CONCLUSIONS OF LAW**
and
# **ORDER OF COURT**

### **FINDINGS OF FACT**

1. On October 2, 2006, while on stationary patrol, Pennsylvania State Trooper Maurer was notified by an unnamed and unknown to Maurer gas company employee that he had observed a van with "lots of Mexicans" in it driving on Route 28, slowing down when police cars were near and speeding up when they were gone. The gas company employee told Maurer he suspected the people in the van were illegal aliens.

2. Maurer encountered a van a short time later at a gas station. Maurer

observed many of the van's occupants milling around. Maurer noticed that they were mostly African/American and/or Asian and not Mexican, as the gas company employee had described as being the occupants of a van. He spoke to the van's driver and, after being satisfied that the driver needed no assistance, Maurer drove away. A short time later, Maurer had second thoughts about the van and thought it might be the vehicle the gas company employee had observed.

3. Maurer went looking for the van and observed the van again as it was proceeding on the roadway. He testified that the van was traveling 35-45 miles per hour in a 55 mile per hour zone without activating its flashing lights. Maurer testified that he stopped the van because of its low speed without flashing lights, which he believed to be a violation of the Pennsylvania Motor Vehicle Code, although he could not identify a section of the Code. Weeks later, when the hearing resumed, Maurer testified as to the sections of the Code he believed were violated.

4. After looking at the van driver's identification, Maurer looked inside the van and observed three (3) people in its front and nine (9) in the rear. This was the same number of people he had seen at the gas station. Some had identification and others did not. Defendant, one of the passengers, showed Maurer a resident alien card that was not authentic.

5. Maurer contacted ICE agents and Defendant later admitted that he was in this country illegally.

6. In evidence at the hearing on the Motion to Suppress (Docket No. 21) was Maurer's Incident Report. Inexplicably, Maurer's report says nothing about the

2

encounter at the gas station or the alleged violation of the Motor Vehicle Code.

7. The van's driver testified similarly to Maurer about the gas station encounter. But, he also testified that he was driving 50-55 miles per hour, within the speed limit. He also testified that Maurer said nothing to him about the manner in which he was driving when Maurer stopped him.

8. Bolstered by the absence of any information in the police report, which would support Maurer's testimony at trial that the driver was driving at a low speed without flashing lights, I find that the testimony of the van driver is credible and Maurer's recollection is faulty.

## **CONCLUSIONS OF LAW**

1. The Government and the Defendant agree that this Motion rests on two arguments:

> (a) whether Maurer had reasonable suspicion that the van was being driven in a way that violated the Motor Vehicle Code; and
>
> (b) whether Maurer had other reasonable suspicion (the "tip") to stop the van.

2. The credible testimony of the van driver, bolstered by the absence of any reference in the Incident Report to the gas station encounter and/or the alleged traffic violation, leads me to conclude that there was no factual basis to support a stop based on an alleged violation of the Motor Vehicle Code.

3. The second question is whether a stop based on the "tip" constituted the requisite reasonable suspicion to conduct the traffic stop.

4. The existence of a reasonable suspicion is based on the totality of the

circumstances. The totality of the circumstances here is the following:

> (a) Maurer is told by an unknown gas company employee that a van full of Mexicans traveling on Route 28, was slowing down when it was in the vicinity of a police car. The employee thought the people in the van might be illegal aliens.
>
> (b) Maurer encountered a van with many occupants at a gas station, spoke to the driver and continued on his way.
>
> (c) Maurer later thought the van might be the van the gas company employee told him about and went looking for the van.
>
> (d) Maurer found the van and conducted a traffic stop based on the "tip."

5. An objective review of the credible facts demonstrates – discounting the alleged traffic violation – that the reasonable suspicion Maurer had was based on a tip that a van full of Mexicans was slowing down when it saw a police car on the road.

6. A tip that a van full of Mexicans was slowing down when it saw a police car is insufficient to lead Maurer to conclude that criminal activity was afoot.

7. The act of a driver slowing down when he sees a police car, regardless of his speed, is so common that it would be beyond the pale to conclude that this is a sufficient basis to suspect criminal activity. The act of slowing down after sighting a police car, regardless of speed, is as much the act of an innocent person as one who is engaging in criminal conduct.

8. A van "full of Mexicans" is not, in itself a sufficient factual basis to suspect criminal activity. The ethnicity of persons, standing alone, cannot by itself justify

4

an investigary traffic stop.

9. Absent other evidence to justify Maurer's stop, Maurer had no basis to reasonably suspect that criminal activity was afoot. For example, there was no evidence that the particular road was a corridor for illegal alien traffic; that Maurer had previous experience with illegal alien traffic on this road; that the driver was evasive at the gas station; or that there was anything suspicious about the vehicle.

### ORDER OF COURT

AND NOW, this **10th** day of January, 2007, the Motion to Suppress (Docket No. 21) is Granted. The Permanent Resident Alien card and the Social Security Card in question, as well as Defendant's confession, are suppressed as evidence at trial.

If the Government intends to proceed to trial, trial will commence on February 20, 2007, at 9:30 A.M. Voir dire and jury instruction are due February 1, 2007.

BY THE COURT:

/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge